IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v. 23-CR-60

PETER GERACE,

Defendant.

**GOVERNMENT'S APPEAL FROM THE DECISION AND ORDER REQUIRING THE GOVERNMENT TO OBTAIN UNRELATED CASE MATERIALS**

**THE UNITED STATES OF AMERICA**, through its attorney, Michael DiGiacomo, United States Attorney for the Western District of New York, Evan Glaberson, Assistant United States Attorney, of counsel, files its Appeal of the Magistrate Court's Decision and Order issued on August 20, 2025, requiring the government to obtain the unrelated case file in *United States v. Lucas* from the District of Utah in order to conduct an independent review. (D&O, Doc. 72, pp. 10 – 11). The government further requests that the September 10, 2025 deadline to certify compliance with the D&O be vacated or stayed until this Appeal is resolved.

For the reasons set forth below, the government submits that the Magistrate Court lacked any basis to order the government to obtain the entire *Lucas* casefile from the District of Utah. The Magistrate Court's order was both clearly erroneous and contrary to law. In the Second Circuit, courts have the authority to order production of discovery and to order provision of *Brady* material only from the specific prosecution team in the pending matter. The court must determine who are the members of prosecution team in order to have the

authority to order a review of the files in question. In this case the Magistrate Court did not find that the *Lucas* team was part of the *Gerace* prosecution, but instead, merely found it "not unreasonable" to order the review of the *Lucas* file. In this circuit, courts typically conduct an analysis of specific factors to determine the scope of the prosecution team. Each of the factors support the conclusion that the *Lucas* team is not a part of the *Gerace* team, and therefore the entirety of the *Lucas* file is not within the possession, custody or control of the *Gerace* team. As a result, the government requests that the order to search the *Lucas* files be vacated.

## **I. Procedural History**

On June 8, 2023, a Grand Jury sitting in the Western District of New York returned an Indictment charging the defendant with four counts of wire fraud related to a series of loans he received under the Small Business Administration's Economic Injury Disaster Loan program. Doc. 1. The defendant was arraigned on June 15, 2023, and the Court set a schedule for the filing of pretrial motions. *See* June 15, 2023, Minute Entry. The scheduling order was subsequently amended and extended, at the request of the defendant and in the interests of justice on November 22, 2023. Additionally, the Court held the scheduling order in abeyance pending the resolution of issues potential conflict issues between January 25, 2024 and December 18, 2024. *See* January 25, 2024, Text Order.

On December 27, 2024, the defendant was convicted after a two-month jury trial before the Honorable Lawrence Vilardo in the matter of United States v. Peter Gerace, No. 19-cr-227, that commenced on or about November 4, 2024. Defendant was found guilty of counts 1, 2, 3, 4, 5, 6, 7 and 9 of the Superseding Indictment, and defendant was found not-guilty of Count 8. *See* Docket 19-cr-227, Docket Entries 1425, 1426, 1427.

The defendant moved to extend the scheduling order in the present matter again on December 18, 2024, on February 3, 2025, and on April 7, 2025.

On January 30, 2025, the undersigned entered an appearance in this matter as lead counsel. In advance of taking over this matter, the undersigned was included on an email chain with counsel for the defendant, Eric Soehnlein, Esq., in which Mr. Soehnlein stated "I misplaced the password for this discovery. Can you share it with me again?" The undersigned sought to provide the password for the discovery materials, and counsel for defendant confirmed that the password worked on February 3, 2025.

On March 25, 2025, the government provided documents to the defendant which were obtained unsolicited from prosecutors handing an unrelated case in the District of Utah, *United States v. Lucas*, 23-cr-405. The *Lucas* documents were sent out as an advisory to other offices handling COVID-fraud cases. The government provided the *Lucas* documents along with public filings from the docket in that case. The materials provided on March 25, 2025 included:

1. 23-cr-405 – Government Motion for leave to dismiss (Public Docket 23-CR-405, Doc. 80).
2. 23-cr-405 – Government Supplement to Motion in Limine regarding updates to EIDL criminal history questions (Public Docket 23-CR-405, Doc. 46).
3. Memorandum of Interview – 11/25/2024 with SBA employee
4. Memorandum of Interview – 12/5/2024 with SBA Director COVID EIDL Servicing Center
5. Memorandum of activity correcting 12/5 MOI

On May 12, 2025, the defendant filed motions to compel and other motions. After additional requests to adjourn by the defendant, oral argument was held on July 23, 2025.

On August 20, 2025, the magistrate court issued a decision and order. (Doc. 72). The Magistrate Court ordered the following:

> Therefore, the Government is ordered to (1) request a copy of the complete *Lucas* file from the United States Attorney's Office in the District of Utah responsible for the *Lucas* prosecution; (2) search the file for any additional *Brady* material in light of the findings herein; and (3) disclose any such material to defendant, should it exist.
>
> The Government is also ordered to conduct another review of its own file in this case, in light of the findings herein, and to disclose any additional *Brady* material to defendant, should it exist. On or before September 10, 2025, the Government shall file an affidavit detailing its compliance with these directives.

The Magistrate Court further stated in a footnote, with no further analysis, that "the record clearly indicates that the Government has specific knowledge of the *Lucas* case and the existence of potential *Brady* material in that case file, as it relates to the instant matter. Moreover, the record shows that the prosecutor in the District of Utah has already shared relevant information with prosecutors in this case and advised them that such information may need to be disclosed in other, similar cases. Thus, the Court does not find it unreasonable, based on the specific circumstances here, to require the Government to obtain the entirety of the Lucas file and to conduct a search for any additional *Brady* material applicable to this case, should it exist."

## **II. Standard of Review**

"[A] district court may only 'modify or set aside any part of [a magistrate judge's non-dispositive] order that is clearly erroneous or is contrary to law.'" *United States v. Aventura Techs., Inc.*, 607 F. Supp. 3d 278, 282 (E.D.N.Y. 2022) (quoting 28 U.S.C. § 636(b)(1)(A)); *see Meyer Corp. U.S. v. Alfay Designs, Inc.*, 2017 WL 5515938, at *2 (E.D.N.Y. Mar. 6, 2017) (applying clear error standard to magistrate judge's "decision to impose

sanctions based solely on the dishonest and bad faith conduct"). "This standard is highly deferential and only permits reversal where the magistrate [judge] abused his discretion." *Aventura Techs.*, 607 F. Supp. at 282 (quoting *Mental Disability L. Clinic v. Hogan*, 739 F. Supp. 2d 201, 203 (E.D.N.Y. 2010)).

In order to warrant reversal by the Court, the appealing party must demonstrate that the decision is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A). "'A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *United States v. Feneziani*, No. 05-CR-290E, 2007 WL 1613630, at *1 (W.D.N.Y. June 1, 2007) (quoting *Garcia v. Teitler*, 443 F.3d 202, 211 (2d Cir. 2006)). "This standard is highly deferential, imposes a heavy burden on the objecting party, and only permits reversal where the magistrate judge abused his discretion." *Centro De La Comunidad Hispana De Locust Valley v. Town of Oyster Bay*, 954 F. Supp. 2d 127, 139 (E.D.N.Y. 2013) (quotations omitted); *see also S.E.C. v. Verdiramo*, 890 F. Supp. 2d 257, 266 (S.D.N.Y. 2011) ("The clearly erroneous standard is highly deferential, and magistrate judges are afforded broad discretion in resolving non-dispositive disputes...." (quotation omitted)).

## III. Inquiry Required to Find Joint Investigation/Prosecution

The government's obligations set forth in Federal Rule of Criminal Procedure 16, the Jencks Act, *Brady*, and *Giglio* "… extend only to materials within prosecutors' possession, custody or control … and [a] prosecutor's duty to review documents in the possession, custody, or control of another agency arises where the Government conducts a "joint investigation" with another agency." *United States v. Collins*, 409 F.Supp.3d 228, 239

(S.D.N.Y. 2019) (finding no joint investigation where the government and SEC investigations had significant overlap but were conducted in parallel fashion) (quoting *United States v. Blaszczak*, 308 F.Supp.3d 736, 742 (S.D.N.Y. 2018), and *United States v. Rigas*, No. 02-CR-1236 (LBS), 2008 WL 144824, at *2 (S.D.N.Y. Jan. 15, 2008) (holding that there was "no joint investigation with the SEC" and therefore the Government did not need to produce documents in the custody of the SEC), *aff'd*, *United States v. Rigas*, 583 F. 3d 108 (2d Cir. 2009)); *see also See United States v. Avenatti*, No. 19 Cr. 734 (JMF), Doc No. 421 at 2 (S.D.N.Y. Feb. 15, 2022) ("[T]he Government's disclosure obligations extend only to evidence or information in the possession of the 'prosecution team' — those involved in the prosecution at issue[.]").

While the Second Circuit has not specifically addressed what criteria or factors a district court should evaluate when making a determination concerning whether an investigation is a joint investigation for purposes of triggering an extension of the Government's *Brady* search obligation, courts in this district have generally been guided by the factors set forth in *United States v. Middendorf*, 18-CR-36 (JPO), 2018 WL 3956494 (S.D.N.Y. Aug. 17, 2018), referred to as the *Millendorf* factors. *See Collins*, 409 F.Supp.3d at 239.

"An individual prosecutor is presumed . . . to have knowledge of all information gathered in connection with his office's investigation of the case and . . . has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case." *United States v. Avellino*, 136 F.3d 249, 255-56 (2d Cir. 1998) (internal quotation marks omitted). "Nonetheless, knowledge on the part of persons employed by a *different* office of the government does not in all instances warrant the imputation of knowledge to the prosecutor."

*Id.* (emphasis added). "[T]he imposition of an unlimited duty on a prosecutor to inquire of other offices not working with the prosecutor's office on the case in question would inappropriately require [courts] to adopt a monolithic view of government that would condemn the prosecution of criminal cases to a state of paralysis." *Avellino*, 136 F.3d at 255 (internal quotation marks omitted); *see also United States v. Locascio*, 6 F.3d 924, 948-49 (2d Cir. 1993) (declining to "infer the prosecutors' knowledge simply because some other government agents knew about" additional evidence where federal prosecutors were unaware of documents in possession of FBI agents who were "uninvolved in the investigation or trial of the defendants"); *United States v. Quinn*, 445 F.2d 940, 944 (2d Cir. 1971) (declining to impute knowledge of federal prosecutor in Florida to federal prosecutor in New York and noting that the "Department of Justice alone has thousands of employees").

A prosecutor's constructive knowledge only extends to those individuals who are "an arm of the prosecutor" or part of the "prosecution team." *See United States v. Gil*, 297 F.3d 93, 106 (2d Cir. 2002); *United States v. Morell*, 524 F.2d 550, 555 (2d Cir. 1975); *see also United States v. Collins*, 409 F. Supp. 3d 228, 239 (S.D.N.Y. 2019) ("[A] prosecutor's duty to review documents in the possession, custody, or control of another agency arises where the Government conducts a 'joint investigation' with another agency."). In other words, discovery and disclosure obligations only extend to those "who perform investigative duties or make strategic decisions about *the prosecution of the case*," including those "who *submit to the direction of the prosecutor and participate in the investigation*." *United States v. Barcelo*, 628 F. App'x 36, 38 (2d Cir. 2015) (emphases added) (quoting *United States v. Stewart*, 433 F.3d 273, 298 (2d Cir. 2006)).

That two U.S. Attorney's offices in different States may "fall under the broad umbrella of the Department of Justice" does not thereby render them part of a same prosecution team. *Gist v. United States*, No. 16 Cr. 656 (GHW), 2021 WL 3774289, at *17 (S.D.N.Y. Aug. 24, 2021). Furthermore, the involvement of agents from one component of an agency in an investigation does not render the entirety of that agency part of the prosecution team. *See, e.g.*, *United States v. Stein*, 424 F. Supp. 2d 720, 723 (S.D.N.Y. 2006) ("While the prosecution's disclosure obligation in some circumstances may extend to materials beyond the knowledge of the individual prosecutors assigned to a case, it does not extend to the collective knowledge of the entire United States government or even to the entire government agency concerned. To the contrary, the prosecution is only obliged to disclose information known to others acting on the government's behalf in a particular case." (internal quotation marks omitted)); *see also Locascio*, 6 F.3d at 949 (refusing to impute to prosecutors' knowledge of reports prepared by FBI agents who were "uninvolved in the investigation or trial of the defendants").

The *Millendorf* factors referenced above provide a useful framework for analyzing whether two offices or agencies are engaged in a joint investigation or prosecution and provide some clarity in this case. The factors set forth in *United States v. Millendorf* include whether the other [entity]:

(1) participated in the prosecution's witness interviews,

(2) was involved in presenting the case to the grand jury,

(3) reviewed documents gathered by or shared documents with the prosecution,

(4) played a role in the development of prosecutorial strategy, or

(5) accompanied the prosecution to court proceedings."

*United States v. Avenatti*, No. 19-CR-373 (PGG), 2022 WL 394494 (S.D.N.Y. Feb. 9, 2022) (quoting *Gist v. United States,* No. 1:16-CR-656-6-GHW, 2021 WL 3774289, at *17 (S.D.N.Y. Aug. 24, 2021) (internal quotations and citations omitted)); *see also Collins*, 409 F. Supp. 3d at 239 (applying *Middendorf* factors).

Whether the *Middendorf* factors point to a joint investigation is not an all-or- nothing proposition. "An investigation may be joint for some purposes; it may be independent for others," and therefore even where there are certain joint investigative activities, that does not, without more, give rise to an obligation for the Government to obtain and search the entire file of a separate team. *See United States v. Gupta*, 848 F. Supp. 2d 491, 495 (S.D.N.Y. 2012) (explaining that even where there is some joint fact-finding, the entirety of the other team's file is not subject to *Brady* review, but rather only those files "arising from . . . joint efforts"); *see also United States v. Carroll*, No. 19 Cr. 545 (CM), 2020 WL 1862446, at *9 (S.D.N.Y. Apr. 14, 2020) ("joint fact gathering" does not "give rise to an obligation by the Government to review [another team's] entire investigative file"); *United States v. Martoma*, 990 F. Supp. 2d 458, 462 (S.D.N.Y. 2014) (ordering production of specific subset of documents in possession of agency involved in joint fact-finding).

## IV. There Was No Joint Investigation

The prosecution team in *U.S. v. Gerace*, 23-cr-60, in the Western District of New York, was never engaged in a joint investigation or prosecution with the prosecution team in the case of *U.S. v. Lucas* in the District of Utah. As a result, the Magistrate Court's order to "request a copy of the complete *Lucas* file from the United States Attorney's Office in the District of Utah responsible for the *Lucas* prosecution" was clearly erroneous and contrary to

law. Additionally, the companion orders for the USAO-WDNY to conduct an independent review of the *Lucas* file fails for the same reason. The Magistrate Court failed to account for any of the so-called "*Millendorf*" factors, or any other potentially pertinent factors, in issuing the order. There was simply no overlap between the prosecution or investigation teams in *Gerace* and *Lucas*, and as a result there is no basis in the record to conclude that the *Lucas* file is within the possession, custody or control of the USAO-Western District of New York. The record in this case demonstrates that there was:

(1) No participation in any prosecution witness interviews,

(2) No involvement in either team's grand jury presentation,

(3) No sharing of investigation documents during the investigation,

(4) No role played by either team in the other's strategy, and

(5) No participant from either team attended any proceedings of the other team, in court or otherwise.

The only overlap of any type consisted of documents containing some information obtained by the *Lucas* team from the Small Business Administration regarding the materiality of defendant Lucas's conviction history. The documents were shared with other AUSA's handling COVID-fraud related cases so that the information could be reviewed and considered for disclosure in appropriate cases. While the WDNY obtained a very limited subset of documents on a particular issue, received without request, from a Small Business Administration witness, defendant Gerace cannot contend that the Utah and New York prosecutors "jointly analyzed those documents or pursued a joint strategy to introduce them." *Avenatti*, 2022 WL 394494, at * 10-11. The government could have merely summarized the *Lucas* documents or conveyed only the potential *Brady* information without reference to the

*Lucas* case. In providing the source documents along with publicly filed documents from the ECF system, the government was attempting to be as thorough as possible. The government did not intend for the provision of the source documents to lead to a fishing expedition into the case and investigation files, both physical and digital, of an unrelated case in a distant district.

The government cannot fathom what additional information the defendant hopes to glean from the *Lucas* files. The government is willing to request that the District of Utah provide (for internal USAO-WDNY review) any additional, non-cumulative materials that were not previously shared bearing on the specific issues presented in the previously disclosed documents. If any such materials exist, the government will review the material and provide the defendant a summary of any non-cumulative *Brady* information, should it exist. Nevertheless, the government does not believe that defendant has established that a joint investigation existed and therefore the materials in the *Lucas* file are not in the possession, custody and control of the government here in the Western District of New York.

The Magistrate Court's decision and order failed to make any factual findings and failed to address any of the so-called "*Millendorf*" factors, and, in the alternative, failed to conduct any analysis of other potentially relevant independent factors. Without such findings and without conducting any analysis considering whether a joint investigation existed, whether the two districts were part of the same prosecution team, or setting out why such analysis was unnecessary, the Magistrate Court's decision and order issued on August 20, 2025 was both clearly erroneous and contrary to law.

The government respectfully requests the Court vacate the Order to obtain and review the *Lucas* file and likewise vacate the Order that the government file an affidavit of compliance pending resolution of this appeal. Finally, the government acknowledges its ongoing discovery, and related obligations, and will continue to comply with its obligations. As a result, the government submits that no further affidavits of compliance are necessary.

DATED: Buffalo, New York, September 10, 2025.

MICHAEL DIGIACOMO
United States Attorney

BY: ***s/EVAN K. GLABERSON***
Assistant United States Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
716-843-5871
Evan.Glaberson@usdoj.gov