UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v. 23-cr-60

PETER GERACE, JR.,

Defendant.

**PETER GERACE, JR.'S OPPOSITION TO THE GOVERNMENT'S APPEAL OF THE MAGISTRATE JUDGE'S ORDER MANDATING DISCLOSURE**

## I. Introduction

Prosecutors in the Western District of New York were provided with materials from *United States v. Lucas* that were exculpatory to Mr. Gerace. The government shared those materials with the defense. At no time did the prosecutors in this district confirm that the materials shared from the *Lucas* case were the complete universe of exculpatory materials within that case file. All parties appear to agree, based on the facts as they are known, it is possible –if not likely – that additional exculpatory materials that pertain to issues in this case exist within the *Lucas* file.

On that record, the Magistrate Judge ordered the United States Attorney's Office for the Western District of New York to make inquiry and ensure that it had shared all relevant, exculpatory material from the *Lucas* prosecution with the defense by a date certain.

The government now opposes the Order of the Magistrate Judge, arguing that the materials at issue do not fall squarely within the purview of traditional *Brady* disclosure. That argument misunderstands the Magistrate Judge's order. In ordering the disclosure, the Magistrate Judge did not opine that the inquiry fell within the scope of the *Brady* rule; rather, on this unique record, the Magistrate Judge found that fundamental fairness and due process – which the federal district court has a well-settled duty to safeguard -- mandates the inquiry and disclosure of the materials to ensure the integrity of this prosecution.

In other words, the Magistrate Judge based his decision on the well-settled, inherent authority of the Court to protect the integrity of proceedings before it. To sustain the government's appeal, reversal would undercut the authority of this Court and leave the matter of fair/fulsome disclosure solely to the discretion of the government. The Court should not abdicate the power given to it by Article III of the Constitution. It should not abandon its duty to safeguard the discovery process. It should mandate the inquiry to ensure that there are no additional exculpatory materials on this issue within the file that the government has already chosen to disclose.

The government's appeal should be denied. The Magistrate Judge's Order should be affirmed. And the government should be mandated to make the inquiry and provide the relevant disclosure as set forth in the Magistrate Judge's decision.

## II. Relevant Facts

The key facts are not disputed.

In this case Peter Gerace, Jr. is charged with four counts of wire fraud stemming from applications for COVID 19 era funding from the Small Business Administration (SBA). In relevant part, those charges allege Mr. Gerace misrepresented his criminal history on two occasions to obtain the funding. To obtain convictions on those two misrepresentations, the government must prove that Mr. Gerace acted with fraudulent intent and that any misrepresentations he made were material to the loan application – e.g., that the misinformation or omission would naturally tend to lead or is capable of leading a reasonable person to change his conduct. *United States v. Weaver*, 860 F.3d 90, 94 (2d Cir. 2017).

In March of 2025, the government produced materials from *United States v. Lucas*, 23-cr-405 (Dist. Utah 2023), a fraud case where, like here, the government alleged the defendant misrepresented his criminal history when applying for the same loan program from the SBA. In the lead up to trial in the *Lucas* case, an SBA employee made statements indicating that the defendant's alleged misrepresentations would not have been material to the resultant SBA loan application. Those statements led prosecutors in Utah to dismiss the Lucas prosecution.

Documents from the *Lucas* case were provided to prosecutors in the United States Attorney's Office for the Western District of New York, apparently in an email that the prosecutor in *Lucas* had sent to a number of individuals across the country, charged with coordinating fraud prosecutions related to the EIDL program. According to the government, the prosecutor in *Lucas* suggested that these individuals may want to consider disclosing the documents in their respective cases, if appropriate. Based on the fact that local prosecutors did provide the materials, they must have determined that the materials did trigger the government's disclosure obligations under *Brady* and its progeny. The government has never disputed that characterization of the disclosure.

In pretrial motions, the defense requested further disclosure from the *Lucas* file, citing the fact that, based on the factual predicate set forth by the government, it was not only possible, but likely, that additional exculpatory material existed in the file. As a matter of basic logic and empirical experience, it seems highly unlikely (if not impossible) that the *Lucas* prosecution was dismissed without further inquiry into the SBA's processes for permitting COVID 19 era loans when it came to the disclosure of an individual's criminal history.

The Magistrate Judge agreed with the defense's position. Specifically, the Magistrate Judge noted that:

> Here, the record clearly indicates that the government has specific knowledge of the *Lucas* case and the existence of potential *Brady* material in that case file, as it

> relates to the instant matter. Moreover, the record shows that the prosecutor in the District of Utah has already shared relevant information with prosecutors in this case, and advised them that such information may need to be disclosed in other, similar cases. Thus, the Court does not find it unreasonable, based on the specific circumstances here, to require the Government to obtain the entirety of the *Lucas* file and to conduct a search for any additional *Brady* material applicable to this case, should it exist.

On that record, the Magistrate Judge directed the government to: (1) request a copy of the complete *Lucas* file from the United States Attorney's Office in the District of Utah responsible for the *Lucas* prosecution; (2) search the file for any additional *Brady* material in light of the findings herein; and (3) disclose such material to defendant, should it exist. Docket Item 72 at p. 10.

## III. Standard of Review

The district judge reviews appeals of a magistrate judge's order under a clearly erroneous or contrary to law standard. Fed. R. Crim. P. 59(a*). See also United States v. Kelly*, No. 18-CR-217-A, 2021 U.S. Dist. LEXIS 91522, 2021 WL 1920777, at *2 (W.D.N.Y. May 13, 2021) (reviewing non-dispositive orders denying motions for disclosure of certain information under a clearly erroneous or contrary to law standard of review); *United States v. Ngoopos*, No. 21-CR-138 (JLS) (HKS),, at *3 (W.D.N.Y. Jan. 8, 2024). As is set forth in the government's briefing, the standard is highly deferential to the Magistrate Judge. The government bears a heavy burden on this issue, and it cannot meet it.

## IV. The government Misunderstands the Magistrate Judge's Order

The government asserts it does not have to search for or disclose the *Lucas* material because disclosure of such material would not normally fall within the ambit of the government's *Brady* obligation. But nowhere does the Magistrate Judge's decision state the *Lucas* material does fall within the prosecution's *Brady* obligations.[1] Rather, as a matter of fundamental fairness, and in accord with the Court's duty to ensure due process, the Magistrate Judge's order rests on the inherent power of the Court to direct disclosure in order to protect the integrity of prosecutions in this Courthouse. The government misunderstands the Magistrate Judge's order and the import of fundamental fairness in criminal prosecutions within our district.

Tasked with the heavy burden of ensuring due process to all defendants, federal district courts have wide authority to mandate and manage disclosure in a criminal context. *United States v. Perez*, 222 F.Supp.2d 164 (D. Conn. 2002). "Guided by considerations of justice, and in the exercise of supervisory powers, federal courts may, within limits, formulate procedural rules not specifically required by the Constitution or Congress. The purposes underlying use of the supervisory powers are threefold: to

---

[1] In a footnote, the Magistrate Judge makes clear the basis for the Court's reasoning is the Supreme Court's decision in *Kyles v. Whitley*, 514 U.S.419, which places an obligation upon the prosecutor to "learn of any favorable evidence known to others acting on the government's behalf in the case." Docket Item 72 at p.10, n.3. In that regard, the government does not dispute that it learned of *Lucas* in an email where several members of the Department of Justice coordinated strategy regarding EIDL/COVID 19 era fraud prosecutions. Id. at p. 7.

implement a remedy for violation of recognized rights, to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before the jury, and finally, as a remedy designed to deter illegal conduct." *United States v. Hasting*, 461 U.S. 499, 500 (1983).

Within our district, this is evidenced, in part, by Standing General Order No. 153, which mandates the disclosure of *Brady* information and other material in all criminal cases. It goes without saying, but by operation of the standing order, the Courts in this district have placed further, additional obligations (and potential penalties for non-disclosure) upon the prosecution above and beyond what prosecutors must adhere to under Rule 16, *Brady* or any other disclosure obligation. The Court's authority to do this is both uncontroversial and well-established.

In that regard, and of note on this specific issue, the Standing Order places the following affirmative obligation on the United States Attorney's Office for the Western District of New York:

> For the purposes of this order, the Government has an affirmative obligation to seek all information subject to disclosure under this order from all current or former federal, state or local prosecutors, law enforcement officers, and other officers who have participated in the prosecution, or investigation that led to the prosecution, of the offense or offenses with which the defendant is charged. *See* W.D.N.Y. General Standing Order No. 153 at p. 7. [2]

---

[2] Of note, the Standing Order does not engage in any analysis as to the relationship between other prosecutors and prosecutors in our district, as the government invites the Court to do in its briefing. All

The Second Circuit has looked favorably and expansively on this authority. For instance, in *United States v. Ming He*, 94 F.3d 782 (2d Cir. 1996), the Second Circuit noted: "A federal court, guided by considerations of justice, may exercise its supervisory powers to formulate procedural rules not mandated by the Constitution. Our authority to review procedures used in federal courts is not limited solely to ascertaining whether they are constitutionally valid. * * * It is our task to supervise the administration of justice in the federal courts, and to that end we must ensure that fair standards of procedure are maintained."

As the Court knows, the Magistrate Judge's decision was rendered on considerations of due process and fundamental fairness. Due process, as the Constitutional phrase has been interpreted, requires that the government not suppress evidence favorable to a defendant or discrediting to its own case, and, upon request, that it disclose to the defense all such information. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963); *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392 (1976); *Pyle v. State of Kansas*, 317 U.S. 213, 63 S.Ct. 177 (1942). The requirement of disclosure extends to candor by the government witnesses as well as matters which relate more directly to guilt or innocence. *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763 (1972); *Napue v. People*

---

that is required to trigger inquiry and disclosure under the Standing Order is mere "participation" in the prosecution.

*of the State of Illinois*, 360 U.S. 264, 79 S.Ct. 1173 (1959). *See also, Williams v. Dutton*, 400 F.2d 797 (5th Cir. 1968), cert. denied, 393 U.S. 1105, 89 S.Ct. 908 (1969).

Effective preparation for trial is the cornerstone of effective representation of criminal defendants and disclosure of information which, in any of a variety of ways, impeaches the witness' credibility is consequently required before trial in order to enable effective preparation. As the court in *United States v. Pollack* pointed out: "[d]isclosure by the government must be made at such a time as to allow the defense to use the favorable material effectively in the preparation and presentation of its case, even if satisfaction of this criterion requires pre-trial disclosure." *United States v. Pollack*, 534 F.2d 964, 973 (D.C. Cir. 1976).

The need for early, pre-trial disclosure of *Brady* material has been highlighted in several cases. In *United States v. Ali Sadr Hashemi Nejad*, 18-cr-224 (S.D.N.Y. Sept. 16, 2020), the government's failure to timely disclose potentially exculpatory documentation and its failure to alert defense counsel to the late disclosure of potentially exculpatory information resulted in the trial court vacating the conviction of defendant, dismissing the case with prejudice, and conducting a judicial inquiry into the conduct of the prosecution. In *United States v. Bernal-Obeso*, 989 F.2d 331 (9th Cir. 1993), irreconcilable discrepancies between the informer's actual record and government representations about the prior record indicated the informer had misled his government handlers. The court vacated the conviction and remanded for an

evidentiary hearing "to restore the parties" to their "pre-trial" position and to ascertain whether the informer had lied to the government. 989 F.2d at 336-337. Several other courts have held similarly. *See also, United States v. Bejasa*, 904 F.2d 137, 140 (2d Cir. 1990), cert. denied, 498 U.S. 921, 111 S.Ct. 299 (1990) (a government file which contained impeachment material regarding a prosecution witness should have been produced "prior to" the witness' testimony); *Gorham v. Wainwright*, 588 F.2d 178 (5th Cir. 1979) (under certain circumstances, delayed revelation of discoverable evidence may deny a defendant an effective defense); *United States v. Opager*, 589 F.2d 799 (5th Cir. 1979) (harm was done by the pre-trial failure of the government to disclose the whereabouts of the informant; crucial importance was given to pretrial opportunity to interview and/or investigate potential witness); *Grant v. Alldredge*, 498 F.2d 376, 381-382, n.5 (2d Cir. 1974) (failure of government to disclose before trial that bank teller picked out photograph of another individual was error); *United States v. Baxter, et al.*, 492 F.2d 150 (9th Cir. 1973), cert. denied, 416 U.S. 940, 94 S.Ct. 1945 (1974) (delay in turning over requested favorable evidence is unconstitutional when delay in disclosure substantially prejudiced the preparation of the defense); *Clay v. Black*, 479 F.2d 319 (6th Cir. 1973) (per curiam) (pre-trial disclosure of an FBI scientific report would have permitted defense to establish necessary claim of custody to introduce certain blood stains); *United States v. Polisi*, 416 F.2d 573 (2d Cir. 1969) (the importance of Brady is to measure the effects of the suppression upon the defendant's preparation for trial); and *Hamric v. Bailey*, 386

F.2d 390 (4th Cir. 1967) (to be effective, disclosure must be made at a time when disclosure would be of value to the accused).

On this record, it is likely that the government –to include the Department of Justice -- has information, in the form of official guidance or an official position from the SBA, relating to its fraud theory in this case. It is likely that the information is helpful and exculpatory to Mr. Gerace. And, in fashioning a decision on the defendant's motion with an eye to fairness and due process, the Magistrate Judge did the right thing in accord to well-settled law in mandating the inquiry and the disclosure.

## V. The government's Argument Misunderstands the Joint Investigation Doctrine

Mischaracterizing the basis for the Court's decision as one based solely in the government's *Brady* obligations, the government's position rests on the argument that that the United States Attorney's Office for the Western District of New York and the United States Attorney's Office for the District of Utah were not conducting a "joint investigation," and, therefore, there can be no duty to search the file from the *Lucas* case. Docket Item 80 at p. 7-12.

This too misses the point. The joint investigation analysis as it relates to *Brady* disclosure is employed where the joint investigation involves an arm of the Department of Justice and another arm of government – which is not the case here as both

investigations were conducted by arms of the Department of Justice. Consider the cases cited by the government:

- *United States v. Morell*, 524 F.2d 550 (2d Cir. 1975) (condemning prosecutors for failing to turn over *Brady* material of a confidential informant until after trial, but nevertheless failing to order a new trial because of other proof in the case);
- *United States v. Barcelo*, 628 F. App'x 36, 38 (2d Cir. 2015) (ruling that prosecutors did not commit a *Brady* violation by failing to provide a statement from a cooperating witness that appeared exculpatory to the defendant before a suppression hearing where the witness had not been questioned before the hearing and where the witness was not an "arm of the prosecution" because he was lay witness not actively participating in case strategy or investigation);
- *United States v. Middendorf*, 18-CR-36 (JPO), 2018 WL 3956494 (S.D.N.Y. Aug. 17, 2018) (refusing to permit disclosure of files from the SEC civil division);
- *United States v. Stein*, 424 F. Supp. 2d 720 (S.D.N.Y. 2006) (refusing to provide audit summaries from the IRS civil division to the defendants in a criminal tax case);
- *Gist v. United States*, 19-cv-5095, 2021 wl 3774289 (S.D.N.Y. 2021) (holding that the prosecution was not obligated to get access to files in the custody of the Bureau of Prisons);
- *United States v. Avellino,* 136 F.3d 249 (2d Cir. 1998) (condemning prosecutors for failing to provide statement that was potentially exculpatory from a cooperating witness, but nevertheless failing to order a new trial because the defendant had subsequently pled guilty and, in the court's view, the information contained therein was not material to issue of innocence or guilt).

Here, there is no dispute that the United States Attorney's Office for the Western District of New York and the United States Attorney's Office for the District of Utah are both arms of the Department of Justice. There can also be no dispute that they coordinate, as is evidenced by the fact that prosecutors in this district came to possess materials from the *Lucas* case in an email, apparently sent throughout the Department

of Justice, to various prosecutors tasked with COVID era loan related prosecutions. The level of coordination and access cannot be disputed, and analysis of the "joint investigation" doctrine is inappropriate where both offices are arms of the Department of Justice.

## VI. Conclusion

For the foregoing reasons, the Court should affirm the Magistrate Judge's Order and mandate the inquiry and disclosure set forth therein.

DATED: September 18, 2025

*s/ Eric M. Soehnlein*
Eric M. Soehnlein, Esq.
SOEHNLEIN LAW PLLC
2100 Main Place Tower
350 Main Street
Buffalo, New York 14202